UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

IN RE:

MICHAEL PETRUSHA and
TRACEY PETRUSHA,

    Debtors./

Case No.: 21-14169-AJC

Chapter 7

**TRUSTEE'S RESPONSE IN OPPOSITION TO**
**DEBTOR'S MOTION TO DISMISS CHAPTER 7 CASE**

Soneet R. Kapila, the Chapter 7 Trustee (the "Trustee") for the estate of Michael Petrusha and Tracey Petrusha (the "Debtors"), through counsel, responds (the "Response") to the *Debtor's Motion to Dismiss Chapter 7 Case* (the "Motion to Dismiss") [ECF No. 25]. In support of the Response, the Trustee states:

**INTRODUCTION**

Dismissal of this case is not in the best interests of the Debtors' creditors. The Debtors failed to disclose at least ten pending exclusive listing agreements and, more notably, at least three pending fully executed sales contracts for the sale of real properties of which the Debtors were hired as sales agents. Two of the three fully executed sales contracts closed after the Debtors' bankruptcy case was initiated and the Debtors earned $75,525.00 in commission which is currently being held by Debtors' bankruptcy counsel. The third fully executed sales contract is still pending and if the sale closes, the Debtors would earn, pursuant to their exclusive listing agreement, an additional commission in the amount of $120,000.00. These commissions are property of the estate. Accordingly, as the creditors in this case are set to receive a substantial distribution, the Trustee asserts that dismissal is not in the best interests of the creditors of this Estate and the Motion to Dismiss should be denied.

## BACKGROUND

*Procedural History*

1.  The Debtors filed a voluntary petition under Chapter 7 of Title 11 of the United States Code on April 30, 2021 (the "Petition Date").

2.  The Trustee conducted the Section 341 Meeting of Creditors (the "341 Meeting") on June 2, 2021.

3.  Debtors' Official Form 106I, discloses that the Debtors are both active real estate agents. *See* ECF No. 12.

4.  The Debtors failed to schedule any exclusive listing agreements or pending contracts for the sale of real estate ("Contracts") on their Official Form 106A/B or on their Official Form 106G. *See* ECF No. 12.

5.  Moreover, despite being the sales agents on three fully executed sales contracts for the sale of real properties totaling $195,525.00 in commissions, the Debtors stated that they did not expect an increase of income within one year after filing bankruptcy on Official Form 106I. *See* ECF No. 12, page 41, line 13.

*Discovery of Unscheduled Assets*

6.  During the 341 Meeting, the Trustee inquired whether the Debtors procured contracts in which they were serving as listing agent, cooperating agent, or buyer's agent. The Debtors advised that they did in fact procure Contracts that remained pending as of the Petition Date.

7.  The Debtors subsequently disclosed to the Trustee that they were serving as agent for both the buyer and seller in three fully executed Contracts. Each of these three Contracts were fully executed by the buyers and sellers prior the Petition Date.

8. Pursuant to Florida law and the terms of the fully executed Contracts, the Debtors were entitled to real estate commissions.

*The Commissions are Property of the Estate*

9. The Trustee asserts that the real estate commissions are property of the Estate and subject to administration.

10. Accordingly, the Trustee attempted to settle with the Debtors.

11. The parties failed to reach a resolution and on July 28, 2021, the Debtors filed the Motion to Dismiss.

*The Debtors Refuse to Turnover the Commissions*

12. On August 2, 2021, the Trustee filed his *Motion to Compel Turnover of Non-Exempt Assets* (the "Motion to Compel") [ECF No. 31] seeking turnover of the real estate commissions that they earned as of the Petition Date.

13. Pursuant to the Trustee's *Notice of Notice of Rule 2004 Examination Duces Tecum* (the "2004 Notice") [ECF No. 35], the Trustee also sought numerous documents related to the Debtors' financial condition and conducted the deposition of the Debtors on August 24, 2021 (the "2004 Examination").

14. The Debtors failed to produce any documents prior to the 2004 Examination.

15. During the 2004 Examination, the Debtors testified that they entered into additional undisclosed exclusive listing agreements and were unsure whether they had found ready and willing buyers for these additional listing agreements as of the Petition Date.

16. After the 2004 Examination, the Debtors produced ten (10) additional exclusive listing agreements of which they were hired as sales agents prior to the Petition Date. Of these ten listing agreements, the Debtors provided closing documents reflecting that three were sold after

the Petition Date. The Debtors failed to provide the actual sales contracts on two of the closed properties, so the Trustee does not know whether the contracts were executed prior to the Petition Date.

## ARGUMENT

17. A chapter 7 debtor does not have an absolute right to obtain a voluntary dismissal of his or her case. *In re Hull,* 339 B.R. 304, 307 (Bankr.E.D.N.Y.2006). A dismissal of a chapter 7 case is governed by the "for cause" requirement of 11 U.S.C. § 707(a) which provides a non-exhaustive list of causes to dismiss. *In re Segal,* 527 B.R. 85 (Bankr. E.D.N.Y. 2015).

18. In determining whether cause exists, courts should look to the facts and circumstances of each case to determine whether dismissal would be in the best interest of all parties in interest. *Id.* at 90. Accordingly, a debtor may not simply change his mind and have his bankruptcy case dismissed. *Id.* Here the facts suggest that there is no cause to dismiss.

19. In Florida, real estate agents earn a commission upon procuring a signed real estate contract or a buyer ready, willing, and able to accept the terms and conditions of the seller. *See Wiggins v. Wilson*, 55 Fla. 346 (Fla. 1908); *see also McAllister Hotel Inc. v. Porte*, 98 So. 2d. 781 (Fla. 1957).

20. When agent procures a signed real estate contract before filing bankruptcy then the agent has earned a commission and the right to receive that commission is property of the bankruptcy estate pursuant to 11 U.S.C. § 541. Post-petition payment of the commission is not determinative and has no effect on the status of the commission as property of the estate. *See In re Brandon*, 184 B.R. 157 (Bankr. N.D. Fla. 1995); *see also In re Taylor & Campaigne, Inc.*, 149 B.R. 993 (Bankr. M.D. Fla. 1993).

21. Here, the Debtors were hired before the Petition Date to procure ready and willing buyers pursuant to various pre-bankruptcy listing agreements. Based on the documents provided, the Debtors procured ready and willing buyers and acquired fully executed sale contracts for the sellers of at least three real properties prior to the Petition Date.

22. As such, pursuant to the Florida law and the respective listing agreements, the Debtors earned their commissions for these three real properties prior to the Petition Date. Accordingly, as the right to receive the commission was earned by the Debtors before their bankruptcy case, the commissions are property of the bankruptcy estate pursuant to 11 U.S.C. § 541.

23. As the two real properties closed after the Petition Date, these commissions that were paid post-Petition Date totaling $75,525.00 are subject to turnover pursuant to 11 U.S.C. § 542. If the third real property, which is currently under contract until October 8, 2021, closes then the $120,000.00 commission is also subject to turnover pursuant to 11 U.S.C. § 542.

24. Accordingly, when the Debtors realized that they might lose their real estate commissions, as these commission are property of the Bankruptcy Estate, the Debtor's simply changed their minds and sought to dismiss their case.

25. Moreover, dismissal of this case would not be in the best interests of the estate or its creditors. As described above, the Trustee has already uncovered at least $75,525.00 that would be readily available for distribution to all creditors through the distribution scheme established under the Bankruptcy Code. Moreover, if the third real property that is currently under contract closes then the Estate would be entitled to an additional $120,000.00 allowing for a total of $195,525.00 in assets for the Estate and its creditors.

26. Furthermore, because the Debtors have not provided most of the documents in their possession that were responsive to the 2004 Notice, the Trustee has not yet had an opportunity to determine whether additional assets or claims exist.

27. Here, the total amount of scheduled unsecured debt is $1,261,502.29. Accordingly, if the Estate recovers $195,525.00 in assets this amount would likely provide, even after paying the Estate's administrative fees, more than a10% recovery for the unsecured creditors.

28. However, if the case was dismissed, it would be a race to the Debtor's non-exempt assets by those creditors that pursued recovery. Thus, dismissal in this case would be contrary to the purposes of the Bankruptcy Code which provide for orderly liquidation and distribution of a debtor's assets to all creditors.

29. Accordingly, for the reasons stated above the Debtors have not demonstrated "cause" to allow a dismissal of this case and the Trustee respectfully requests this Court to deny the Motion to Dismiss.

WHEREFORE, the Trustee respectfully requests this Court enter an order: (a) denying the Motion to Dismiss; and (b) granting such other and further relief as this Court deems just and proper.

Dated: September 2, 2021                Respectfully Submitted,

Markowitz Ringel Trusty & Hartog, P.A.
*Counsel to Chapter 7 Trustee*
9130 South Dadeland Boulevard, Suite 1800
Miami, Florida 33156
Tel. (305) 670-5000 // Fax. (305) 670-5011

By: /s/ *John H. Lee*
    John H. Lee, Esq.
    Florida Bar No. 91795
    jlee@mrthlaw.com